UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LAMONT J. GRISWOLD,


                              Plaintiff,

                                                    DECISION AND ORDER

                                                    99-CV-6654L


          v.

DR. BRIAN D. MORGAN,
DR. HASMUKH  K. CHOSKEY,


                              Defendants.

_____


          Plaintiff, Lamont J. Griswold ("Griswold"), an inmate confined to the custody of the New

York State Department of Corrections ("DOCS")[1], commenced  this action, *pro se,* against two

medical doctors, Dr. Brian D. Morgan and Dr. Hasmukh K. Choskey, pursuant to 42 U.S.C. § 1983.

Griswold claims that the defendants' medical treatment of him constituted cruel and unusual

punishment in violation of the Eighth Amendment of the United States Constitution. Both

defendants have moved for summary judgment.[2]  Griswold has submitted his affidavit and a

memorandum of law in opposition to the motions.  Defendants' motions for summary judgment are

granted, and the complaint is dismissed.

_____

[1]Griswold is serving a 25-year sentence for the attempted second-degree murder of his wife.


[2]Defendants' prior motion for summary judgment on the ground that Griswold failed to exhaust his
administrative remedies was denied by Decision and Order entered January 29, 2004 (Dkt. #63).

**Facts**

On February 5, 1998, Griswold underwent a heart bypass operation at Strong Memorial Hospital to rectify a cardiac condition.  The gist of his claim in this federal lawsuit is that defendants Morgan and Choskey failed to properly diagnosis and treat his heart problem sooner and in a different manner.  The operation at Strong Memorial Hospital was performed by a consulting cardiac surgeon, Dr. William H. Riser, one of several cardiac specialists, who reviewed Griswold's condition during the several months prior to surgery.

Plaintiff had been in the prison system for four years prior to his transfer to the Groveland Correctional Facility in July 1993.  Prior to his transfer to Groveland, Griswold was confined in three separate correctional facilities, Wende, Orleans and Collins.  Both defendant doctors worked at Groveland and neither had any contact with Griswold prior to his stay there.

Dr. Morgan was a physician specializing in internal medicine and was a staff physician with DOCS for 17 years until 1999.  Declaration of Brian D. Morgan, executed on February 2, 2005, filed February 7, 2005 (Dkt. #93) (hereinafter "Morgan Dec."), ¶ 2. Dr. Choskey was employed as a staff physician for 18 years prior to 1997 when he retired.  Declaration of Hasmukh K. Choskey, executed February 7, 2005, filed February 7, 2005 (Dkt. #101) (hereinafter "Choskey Dec."), ¶ 2.  Dr. Choskey indicated that he had treated Griswold on nine separate occasions from June 1994 to September 1997 for a variety of ailments.  (Choskey Dec., ¶ 9, ¶ 12).  Choskey stated that Griswold only complained to him once of chest pains and that was on September 11, 1997 (Choskey Dec., ¶ 24).  In fact, there were extensive periods when Griswold not only did not complain of chest pains but never presented at the medical clinic.  Choskey states that eight months passed from November 1995 when he was

examined by Dr. Morgan until July 1996 when he was again seen by Dr. Morgan.  Choskey Dec., ¶ 16; Morgan Dec., ¶ 50.

Dr. Morgan treated plaintiff for various maladies, including an ear infection, headaches, skin rash, facial pimples and burned fingers up to about September 1995.  Dr. Morgan noted that there were extensive periods of time when Griswold made no complaints about chest pain.  For example, over a 10-month period from November 1994 through September 1995, there were no complaints of chest pain.  Morgan Dec., ¶ 46.

Eventually, there were complaints to both doctors about numbness and occasional blackouts.  Dr. Morgan did provide medication and ordered laboratory tests and an EKG.  The EKG came back with normal results in November 1994. For the next ten months, plaintiff made no further complaints to Dr. Morgan concerning numbness.  In November 1995, Griswold renewed his complaints to Dr. Morgan who performed a physical examination and found no evidence of "serious pathology."  Morgan Dec., ¶ 49.  Over the next year or so, plaintiff had a further EKG, physical examinations, and laboratory tests.

In August 1997, plaintiff was treated for complaints about loss of hearing and Dr. Morgan approved an examination by a consulting ear, nose and throat specialist.  The report showed no abnormalities.  Three months later, Dr. Choskey authorized a further consulting examination, this time with a cardiac specialist.  Dr. Choskey noted in his referral that plaintiff had a "strong family history of coronary artery disease (mother), has high cholesterol, and is a smoker." Morgan Dec., ¶ 55.  Apparently, Griswold's mother had suffered a heart attack shortly before this visit and

Griswold was concerned as to whether his condition should be checked.  Dr. Choskey noted that the urgency of care should be "soon" and he ordered another EKG, a lipid profile, and a stress test.

Pursuant to that request, Griswold was seen by Dr.  Tarun Ohri at the Wyoming County Community Hospital in October 1997.  Dr. Ohri is a cardiologist.  Morgan Dec., ¶ 56. Dr. Ohri reported his findings in a letter to Dr. Morgan dated October 24, 1997 (Exhibit to Morgan Dec.). He noted that Griswold had a strong family history of coronary artery disease and that he had been experiencing chest pains on exertion for the last two years.  He noted that the chest pains "have not increased in frequency or duration," but that  Griswold still had "occasional episodes" of chest pains. He noted a somewhat elevated blood pressure but found that his "cardiac examination is unremarkable."  He determined that the patient "possibly has underlying coronary artery disease."

Dr. Ohri did *not* recommend drastic action at that time but recommended treating Griswold with medication.  He noted, though, that if the patient continued to have frequent episodes of chest pains, despite medication, he would recommend a coronary angiography.  Letter of Dr. Ohri; Morgan Dec., ¶ 56.

Based on Dr. Ohri's reports, plaintiff was given the recommended medications at Groveland. Within a month or so, on December 29, 1997, Griswold underwent another EKG based on his complaint of continued chest pain which was not relieved by medication.

On January 5, 1998, plaintiff again saw Dr. Morgan because of unrelieved chest pain.  Dr. Morgan noted the problem and again immediately referred plaintiff to see a cardiologist outside of the facility. He described this cardiology referral as "urgent."  At that time, Dr. Morgan also admitted Griswold to Groveland's infirmary for observation and performed a battery of tests.

- 4 -

Pursuant to Dr. Morgan's referral, Griswold was seen by Dr. James Eichelberger, a cardiologist at Strong Memorial Hospital, on January 16, 1998.  Morgan Dec., ¶ 66. The recommendation of Dr. Eichelberger was not for immediate surgery.  On the contrary, Dr. Eichelberger stated that his preference was to manage Griswold's pain medically, and he added certain medications.  If that failed, Dr. Eichelberger indicated that bypass surgery might be necessary. He recommended a followup in two or three weeks.  Morgan Dec., ¶ 66; Eichelberger Report of Consultation, January 16, 1998 (Exhibit to Morgan Dec.).

Two weeks later, Griswold was seen by another cardiologist, Dr. Friedrich Albrecht at the Wyoming County Community Hospital.  Morgan Declaration at ¶ 69.  This doctor recommended bypass surgery within the week.  Based on that recommendation, Dr. Morgan immediately prepared another consulting request to Strong Memorial  Hospital.  Pursuant to that, plaintiff was admitted to Strong Memorial Hospital two days later, and the bypass surgery was performed on February 5, 1998.

## Eighth Amendment Claims:  General Standards

To show that prison medical treatment was so inadequate as to amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, plaintiff must prove that defendants' actions or omissions amounted to "deliberate indifference to a serious medical need."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  The Second Circuit has stated that a medical need is "serious" for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v.*

*Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995)).  *See also Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain' ") (quoting *Chance*, 143 F.3d at 702).

Among the relevant factors for determining whether a serious medical need exists are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (1997)).  At the same time, however, "[a]n assertion of pain sensation alone, unaccompanied by any large medical complications, does not amount to a serious medical need under the Eighth Amendment." *Livingston v. Goord*, 225 F.Supp.2d 321, 329 (W.D.N.Y. 2002) (quoting *Inciarte v. Spears*, No. 97 Civ. 3155(HB), 1998 WL 190279, *3 (S.D.N.Y. Apr. 20, 1998)); *see, e.g.*, *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000) ("Failure to 'dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue–the sorts of ailments for which many people who are not in prison do not seek medical attention–does not ... violate the Constitution'") (quoting *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)).

As to the "deliberate indifference" component, the Supreme Court explained in *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991), that this standard includes both an objective and a subjective element.  With respect to the objective aspect, the court must ask whether there has been a

- 6 -

sufficiently serious deprivation of the prisoner's constitutional rights. With respect to the subjective component, the court must consider whether the deprivation was brought about by defendants in wanton disregard of those rights. *Id.* To establish deliberate indifference, therefore, plaintiff must prove that the defendant had a culpable state of mind and intended wantonly to inflict pain. *See Wilson*, 501 U.S. at 299; *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991); *Ross v. Kelly*, 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040 (1992).

The Court in *Estelle* also cautioned that mere negligence is not actionable. "A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.* at 102, or "incompatible with the evolving standards of decency that mark the progress of a maturing society," *id.* at 105-06. It is clear, then, that allegations of malpractice alone do not state a constitutional claim. *Id.* at 106 n. 14; *Chance*, 143 F.3d at 703-04; *Ross*, 784 F.Supp. at 44.

Likewise, an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703; *see also Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion").

### Griswold's Eighth Amendment Claims

Plaintiff has failed to present a material issue of fact that defendants engaged in deliberate indifference to his medical needs.  Neither the objective nor the subjective elements have been established to defeat summary judgment.

Plaintiff advances his claim based on the 20-20 vision afforded by hindsight.  But simply because plaintiff eventually underwent heart bypass surgery does not suggest that his care prior to that was deficient.  Many persons with a similar history of high cholesterol and a habit of smoking eventually need a bypass to eliminate clogged arteries.  Generally such a procedure is not the first option chosen.  Dr. Morgan and Dr. Choskey treated plaintiff conservatively with medication, tests and monitoring.  They ordered a series of tests, administered medication and directed plaintiff to undergo an EKG on several occasions.

It appears that for a period of time, plaintiff's complaints were episodic and not persistent.  The medical record does not demonstrate that plaintiff consistently complained of the pain and chest problems that were evident in late 1997 and early 1998.  When the chest pains and numbness increased, plaintiff was immediately referred to outside cardiologists.

It is hard to criticize what defendants did, since two separate cardiologists also initially took a conservative approach.  In October 1997, Dr. Ohri initially treated Griswold with medication.  He did not initially recommend surgery or other invasive procedures.  Even when plaintiff's pain increased in late December 1997 and early January 1998, Dr. Eichelberger, a cardiologist at Strong Memorial Hospital, decided to manage Griswold's pain with medication.  He recommended that

Griswold be monitored and only if the medication proved ineffective would he even consider bypass surgery.

It appears that over time Griswold's condition may have deteriorated, which eventually necessitated bypass surgery. But, it is most notable that two cardiologists, specialists in the field, also attempted to treat Griswold with medication and observation. Their approach when Griswold's complaints appeared to become more frequent and more serious than they had been previously, suggests that Dr. Morgan and Dr. Choskey's treatment plan was not unreasonable.

A few weeks later, Griswold's condition was such that a third cardiologist, Dr. Albrecht, did recommend immediate bypass surgery. Dr. Morgan responded immediately to that recommendation by taking steps to obtain the necessary consult at Strong Memorial Hospital where Griswold had the recommended procedure performed within days.

I believe that the medical record demonstrates that defendants were attentive to plaintiff's needs. As his condition worsened, they responded appropriately and took steps to have several cardiac specialists examine and treat plaintiff. Doctors Morgan and Choskey steadfastly followed the recommendations of the consulting cardiologists.

Plaintiff claims that defendants should have taken more drastic measures sooner, but there is no medical evidence that earlier action would have changed the outcome. Dr. Thomas A. Rocco, Jr., a board certified cardiologist and former chief of cardiology at Highland Hospital and Park Ridge Hospital in Rochester, New York, submitted a declaration on behalf of Dr. Choskey. Declaration of Thomas a Rocco, Jr., executed on February 4, 2005, filed February 7, 2005 (Dkt. #99), ¶ 1 (hereinafter "Rocco Dec.").

After reviewing the medical records, Dr. Rocco indicated that in his expert opinion, Dr. Choskey provided appropriate care and recommendations concerning the complaints that he had received. Based on the lack of specific complaints, Dr. Choskey took appropriate measures and made the necessary referrals for additional tests. When Griswold first complained in September 1997 of acute distress, Dr. Rocco found that Dr. Choskey appropriately responded by ordering an EKG, a lipid profile, a stress test and a refill of Zocor. Rocco Dec., ¶ 5. Dr. Rocco noted that soon thereafter, Griswold was referred to not one but two cardiologists who assumed principal care and treatment from that point on.

Dr. Rocco also stated that there is no evidence of any significant heart damage or ongoing ischemia (lack of blood flow to the heart). Plaintiff has no restrictions as far as work or recreational activities are concerned. Dr. Rocco referenced other consulting cardiologists who examined Griswold after the surgery and noted their opinion that Griswold has no restrictions. Rocco Dec., ¶ 9.

It appears then from all the evidence that both Doctors Morgan and Choskey treated Griswold appropriately and responded, as necessary, when Griswold's conditions appeared to have worsened. They took steps to have him examined outside of the facility with treating cardiologists, who both treated Griswold conservatively initially. I find no Eighth Amendment claim whatsoever.

At most, plaintiff's claim sounds in negligence or malpractice. The gist of the complaint is that the doctors acted negligently and did not take appropriate steps which Griswold claims were necessary and warranted. I do not believe such a claim is supportable, but even if that were the case, a claim for negligence or malpractice does not constitute a viable claim of a constitutional violation.

- 10 -

Much more is required.  Both Doctors Morgan and Choskey were attentive and treated Griswold for the complaints that he made.  There is no evidence of any kind that either doctor was indifferent to his medical condition.  There is no proof that either doctor acted with a culpable state of mind or intended in some way to inflict pain on Griswold.  The Supreme Court  and other courts have admonished that mere negligence or malpractice is not actionable and does not state a constitutional violation under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  *Estelle*, 429 U.S. at 106.  Griswold's disagreement with his care, either at the time or now, is not sufficient to state a viable § 1983 claim.

## CONCLUSION

The motion for summary judgment filed by defendant Brian D. Morgan (Dkt. #90) is granted; the motion for summary judgment filed by defendant Hasmukh K. Choskey (Dkt. #91) is granted. Plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       July 27, 2005.

- 11 -